## Chicago, St. Louis & New Orleans Railroad Company, et al. v. Benedict's Administrator.

(Decided September 17, 1913).

### Appeal from Hickman Circuit Court.

1. Carriers—Passengers.—One riding on a train with the knowledge and consent of the conductor is a passenger.

2. Evidence—Witness.—Where the conductor of a train denies that plaintiff's decedent was riding on a train with his knowledge and consent, evidence of a statement by him showing the contrary is admissible for the purpose of impeaching him.

3. Evidence—Record—Oral Evidence.—Where defendant is notified to produce a record and fails to do so, oral evidence of its contents is admissible if the record itself is admissible.

4. Evidence—Record.—A written report by an engineer handling an engine just before an accident, to the effect that the engine was defective, and filed in the round house is competent on the question of notice.

5. Instructions.—An instruction which fails to define an emergency in which plaintiff may act as one created by the negligence of the defendant is not prejudicial where no other emergency existed.

6. Verdict—Excessive.—Facts considered, and verdict of $12,500 held not excessive.

BENNETT, ROBBINS & THOMAS, C. L. SIVLEY, TRABUE, DOOLAN & COX and R. G. ROBBINS for appellants.

R. L. SMITH for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

John Benedict, while riding in the caboose of a local freight train owned and operated by the Illinois Central Railroad Company, lessee of the Chicago, St. Louis & New Orleans Railroad Company, was killed by a collision

between that train and a train approaching from the rear. His administrator brought this action against the two companies to recover damages for his death. The trial resulted in a verdict and judgment in his favor for $12,500. The railroad companies appeal.

The accident occurred on March 14, 1912, a few miles south of Clinton. The decedent, John Benedict, a young man about 25 years of age, was riding in the caboose of a local freight train. This freight train was standing near a trestle, and had just started on its journey when another freight train ran into it from the rear. Without giving the evidence in detail, it is sufficient to say that it not only shows that the engine of the rear freight train was in a defective condition, but that the engineer and fireman disregarded two or three signals indicating the presence of the other train immediately in their front. There was also evidence tending to show that the front train was not properly protected by the flagman. Indeed, if the weight of the evidence is to be believed, it presents a case of inexcusable negligence.

In addition to the question of negligence on the part of the defendants, two other questions are presented: (1) Was the decedent a passenger at the time of the accident? and (2) Was he guilty of contributory negligence?

Upon the first question the evidence is to the effect that he was in the caboose in company with another passenger, and in company with the conductor and the other trainmen. The conductor admits that he reported the decedent as a passenger, and that he swore in the examination before the superintendent that decedent paid him a fare of 42 cents. This evidence was admitted without objection. We think the evidence sufficient to show that the decedent was on the train with the knowledge and consent of the conductor, and if so, he was a passenger. This conclusion does not conflict with the rule laid down in L. & N. R. R. Co. v. Webb., 99 Ky., 332. There the court held that the presence of the boy in the caboose with the knowledge of the conductor did not constitute him a passenger, because it was not the duty of the conductor to put the boy off before reaching the next stopping place. In the case under consideration, however, the train on which the decedent was riding stopped for several minutes just before the collision. If decedent was on his train without his consent the conductor could easily have put him off at that point.

During the progress of the conductor's examination he denied that the boy was on the train with his knowledge and consent. He was then asked if he had not told plaintiff, Mr. Benedict, on the Sunday after the accident near Ernest Reed's store that John was on his way to Fulton that day to get a job as flagman, and that he (conductor) was trying to help him get that job, and was taking him to Fulton that day for that purpose. The conductor denied making the statement, and the evidence was received without objection. Later on plaintiff, Benedict, was called and testified that the witness, at the time and place, made such a statement to him. This testimony was objected to, and it is earnestly insisted that the court erred in permitting it to go to the jury. It is true, as argued by counsel for defendants, that the statement is not a part of the *res gestae*. It is equally true that it is the general rule that admissions or declarations of an agent made after the completion of the transaction are not admissible against the principal, but in the present case the question was: Was decedent on the train with the knowledge and consent of the conductor? The conductor repeatedly stated that the decedent was not on the train with his knowledge and consent. Whether or not he was there with his knowledge and consent was not a collateral fact, but one of the main facts in issue. Having denied knowledge and consent, it was competent to show statements to the contrary for the purpose of impeachment. The evidence complained of was of this character, and the court admonished the jury that the admitted evidence was not substantive evidence and had no bearing on the merits of the case, but that the jury should consider it only as affecting the credibility of the conductor. With this admonition the evidence was clearly admissible.

While the engineer in charge of the colliding engine was on the stand, he stated that the air pumps of that engine were defective. He was asked if he had notice of the condition of the air pumps. He stated that he had, and was then asked where he got the notice. He stated that he had gotten it from a report made by the engineer handling the engine just before the accident, and filed in the round-house at Mounds, Illinois. The further question was asked: "What did that report state with reference to that engine?" Over the objections of the defendants, the witness was permitted to state that the air pump was in a bad condition, and did not make

enough air to supply the train. In this connection it is insisted that there was a failure to show that the record in question was made in the regular course of business, and a failure to introduce the person making' the record. It is also insisted that it was not proper to introduce secondary evidence of the record. In answer to the last objection the record discloses the fact that several days prior to the trial a written notice was served on the defendants asking them to produce the record in question, and a rule was also asked requiring them to do so. The defendants failed to produce the record. If, then, the record was competent at all, oral evidence of its contents was certainly admissible. We do not think that the record in question is to be considered in the same light as entries in books. One of the material questions in the case was: Was the engine in a defective condition, and if so, was this condition known to the defendants and their agents, or could it have been known by them by the exercise of ordinary care? We think the evidence was competent as bearing on the question of notice. It is true that after the report was filed, the engine could have been repaired. This fact, however, does not render such evidence inadmissible. Having shown that the engine was in a defective condition, and that this fact was brought home to the defendants and their agents, the defendants could still show that the engine was repaired and that the alleged defective condition did not exist at the time of the accident.

Complaint is made of the instructions because it is alleged that they assume that decedent was a passenger. While the instructions may be subject to verbal criticism, we conclude that defendants' complaint in this respect is without merit. Fairly considered, the instructions leave no doubt that one of the issues to be passed on by the jury was whether or not decedent was a passenger at the time of the accident.

Another complaint of the instructions is based on the following addition to the instruction on contributory negligence:

"Unless you further believe from the evidence that, at the time decedent remained in the caboose, an emergency existed and the decedent made choice of means used and in making said choice, used what appeared to him, under the circumstances surrounding him at said time, to be the safest means of escape and exercised

ordinary care in making said choice, then the plaintiff would be entitled to recover, even though his choice was not the best and amounted to negligence and carelessness as set out hereinbefore.''

It is argued that this part of the instruction is erroneous in that it does not require the emergency under which decedent was excused from contributory negligence to have been brought about or produced by the negligence of the defendants in any manner whatever. It must be remembered, however, that in the case under consideration the only emergency that existed was created by the defendants. One of its trains was approaching another train from the rear. A collision was inevitable. The failure, therefore, to define the emergency as one created by the negligence of the defendants could not have been prejudicial.

Lastly, it is insisted that the verdict of $12,500 is excessive. The evidence shows that decedent was about 25 years of age, and had an expectancy of about 32 years. It further appears that he was able to make, when he was at work, from a dollar to a dollar and a half a day. While the verdict is large, we cannot say that it is in excess of decedent's earning power. We cannot assume that a young man's earning power will always remain the same. Calculations, therefore, based on his earning capacity at the time of his death are by no means, conclusive. His earning capacity may increase, and frequently does. The test is: What sum will compensate his estate for the destruction of his power to earn money? In each case this is a question for the jury, with the settled policy on the part of the court not to interfere with its verdict unless the sum be so large as to strike us at first blush as being the result of prejudice or passion. Applying this rule in this case, we cannot say that a verdict of $12,500 is excessive.

Judgment affirmed.