# Woltering et al. v. Weber's Administratrix.

(Decided Dec. 15, 1933.)

**56**

BENTON, BENTON, SMITH & LUEDEKE, GEORGE J. HER-
OLD and BENTON, YUNGBLUT, SCOTT & BENTON and ULIE J.
HOWARD for appellants.

ODIS W. BERTELSMAN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Theodora Weber, as administratrix of her deceased husband, Daniel Weber, recovered judgment for $10,000 in the Campbell circuit court against F. J. Woltering and the C. Rice Packing Company, a corporation, for the death of her decedent, alleged to have been caused by the negligent operation of an automobile of the packing company which was being operated by Woltering, its employee, in the course of his employment.

The accident occurred at the intersection of Alexandria pike and Twenty-First street in the city of Newport. The evidence for appellee shows that deceased had started across the street at the regular intersection crossing and was practically across when he was struck by the automobile and sustained injuries resulting in his death shortly thereafter. His skull was fractured, the bones in both arms and legs broken, and he sustained other injuries.

Alice Myers, who was in a store at the intersection, testified that her attention was attracted by an "awful squeaking" of brakes, and looking out she saw an automobile skidding sideways, and the body of a man being hurled through the air; that the automobile continued on and struck another automobile, knocked it into still another, then went on down the road and overturned. She also testified that she saw marks on the surface of the road where the automobile skidded. She

further testified that Mr. Weber's body struck an automobile parked off the highway on the east side. D. S. Kirby testified that he was standing at the street car line something like 200 feet from the intersection and saw the automobile strike decedent and knock him up in the air 6 or 8 feet. Harry Brocker testified that he was driving out the pike toward Alexandria and saw a man crossing the intersection from the west to the east side; that the man had reached the middle of the highway and started running just as the automobile came around the curve; that he was ready to step off the paved portion of the road when he was struck by the bumper of the automobile and knocked through the air, striking the hood of another car. He stated that the automobile was coming awfully fast, estimating its speed at about 50 miles per hour, and that, after striking the man, it crashed into his (witness') automobile and knocked it off the road and into a Ford parked at the side of the road; that it continued on and overturned about 25 feet from where it struck his automobile. The evidence shows that Weber who delivered meats to his employer's customers usually used a truck, but that in making special deliveries he would use a Ford coupe which he was driving at the time of the accident. Roy Benedict testified that he lives at 2117 Alexandria pike about 300 or 400 feet from the intersection of Twenty-First street with Alexandria pike, and saw the automobile driven by Woltering pass his home; that his attention was attracted to it by the "terrible rate of speed he was going"; that he saw it proceeding on to the intersection and heard two crashes. He testified that the automobile was going so fast that it swayed from side to side, and estimated the speed at from 40 to 50 miles per hour. He and other witnesses testified that they heard no signal given by the driver of the automobile. He also testified to seeing marks on the surface of the pike apparently made by the tires in skidding. These marks started about 75 feet from where the Brocker automobile was struck. William Jenkins, a son-in-law of decedent, testified that the latter was 62 years of age at the time of his death; that he and his father-in-law were engaged in the grocery business and lived together; that the family lived from the income from the store, which was about $15 or $16 per week; that prior to entering the grocery business deceased was employed by a chemical company at a salary of $22 per week. It appears that deceased

furnished practically all the capital for the grocery business.

Frank Woltering testified that he was driving north on Alexandria pike, and, when about 150 feet from Twenty-First street, noticed a man crossing the road; that he applied the brakes, and, when he felt that he had control of the automobile, he released them, and traveled about 100 feet, when he noticed the man had stopped about the middle of the highway and was looking at him; that he assumed the man was going to wait, so he continued on; that, when he reached a point about 10 feet from the man, he threw up his hands and ran across; that he swerved to the left to avoid running over him, and the right rear fender struck him; that his automobile then collided with Mr. Brocker's automobile, and the wheels went up in the air; that he attempted to put his foot upon the brake, but did not know whether he hit the brake or the accelerator, and shortly afterward the automobile turned over. His evidence indicates that there is a slight curve in the road where he approached the intersection. Florence McWilliams testified that she was in her home looking out the window and saw deceased start across the pike, and, when he got about the middle, he threw up his hands and started running, and all of a sudden a machine came down; that she thought he was across, but saw him fall; that the automobile was not going very fast.

One of the grounds in the motion and grounds for new trial is newly discovered evidence, and in support of this ground the affidavits of two physicians, the president of the packing company, and one of appellant's attorneys are filed. The affidavits of the physicians show that prior to the accident they were called to treat deceased and found him suffering from epilepsy; that he was suffering from grand mal epilepsy, which differs only in degree from petit mal epilepsy; that in the former state patients lose consciousness and have convulsions; that it slows the mind and muscular efforts of the patients; that patients afflicted with the lighter form have a hesitancy and temporary loss of knowledge as to what they are doing. The physicians further stated that they had observed deceased, and that he walked slowly and paid little attention to automobiles; that his mentality was not normal and was somewhat of a childish nature; that he thought and acted slowly. The affidavit of the president of the company is to the effect

that the officials of the company did not know until after the trial that decedent had been afflicted with epilepsy, and the affidavit of the attorney is to the effect that they did not discover the evidence until after the trial, and could not have discovered it with reasonable diligence.

Another ground for new trial was misconduct of counsel for appellee in his closing argument to the jury, and this was supported by affidavit of one of appellant's counsel which sets forth improper statements alleged to have been made by opposing counsel.

Counsel for appellee filed a counter affidavit stating that the argument complained of was made in reply to argument made by counsel for appellant that all of the evidence introduced for appellee was merely guesswork and indefinite, and further that the court sustained objections to the statement complained of, admonished the jury to disregard it, and not to consider it in arriving at the verdict.

It is first argued by counsel for appellant that the court erred in refusing to grant a new trial on the ground of newly discovered evidence.

To justify the granting of a new trial on this ground, it must be made to appear (1) that the newly discovered evidence is of such a character that it would likely have a controlling effect on the verdict of a jury; (2) that it was not and could not have been discovered by the exercise of ordinary diligence prior to the trial. In the proven facts and circumstances it is manifest that the alleged newly discovered evidence could not and would not have had a controlling or any effect upon the verdict of the jury. The weight of evidence tends to refute any idea that any slowness of thought or hesitancy in action in any way contributed to the injuries received by deceased. On the other hand, it tends to establish that in crossing the street Mr. Weber discovered that he was in the path of an automobile approaching at a terrific rate of speed and ran in an attempt to reach a place of safety. While the evidence of Mr. Woltering indicates that Mr. Weber stopped as though to permit the automobile to pass, and then when it approached ran in front of it, the evidence of a number of other witnesses and the proven facts, circumstances, and surrounding conditions so preponderatingly indicate otherwise as to forbid a conclusion that the newly discovered evidence would have had a controlling

or any effect upon the minds of the jury, either as bearing upon his ability to think and act promptly in an emergency, or upon his power to earn money.

But, wholly apart from any question as to the probable effect of newly discovered evidence of this character, there is an utter absence of showing of any diligence exercised by appellants or their counsel to discover it. The affidavits merely state that the evidence was not discovered prior to the trial, and that it could not have been discovered by the exercise of ordinary diligence. The latter statement is merely a conclusion without any statement of fact to sustain it. The affidavits are silent as to any inquiry or effort to secure information with respect to the physical condition or state of health of Mr. Weber at the time, or prior to the time, of the accident. Counsel for appellants knew in advance of the trial that evidence bearing on the physical condition of decedent was competent and material, yet they permitted the case to go to trial without making inquiry of neighbors and acquaintances concerning the health and physical condition of Mr. Weber. It is obvious that appellants had little difficulty in discovering this evidence after the trial, and there is nothing to indicate that it could not have been discovered before the trial by the use of ordinary diligence.

In the recent case of Luck v. City of Covington, 248 Ky. 834, 60 S. W. (2d) 103, 104, it is said:

"The policy of the law is to determine causes with all expedition consistent with orderly procedure and justice, and parties should not be encouraged to speculate on the outcome of a trial by postponing investigation until after a verdict has been reached and then urge as grounds for another trial evidence which at all times had been within easy reach and could have been discovered by the exercise of due diligence. Maynard v. Boram, 180 Ky. 392, 202 S. W. 863; Quick v. Stanley, supra [217 Ky. 176, 289 S. W. 224]."

It is next argued that the verdict of the jury is so excessive as to indicate that it was the result of passion and prejudice upon the part of the jury, and especially when considered in the light of the alleged newly discovered evidence.

The difficulty, if not the impossibility, of adopting

a definite standard by which to determine whether verdicts are excessive has often been a subject of comment in this and other jurisdictions, and the only definite rule to be evolved and given general recognition is that a court of review should not set aside a verdict as excessive unless from a consideration of all the facts and circumstances it is clearly manifest that the verdict was the result of passion and prejudice. Green River Light & Water Co. v. Beeler, 197 Ky. 818, 248 S. W. 201; Chicago, St. L. & N. O. Ry. Co. v. Benedict's Administrator, 154 Ky. 675, 159 S. W. 526; Allender Co. v. Browning's Adm'x, 242 Ky. 273, 46 S. W. (2d) 116.

The question of the amount that will adequately compensate for the destruction of one's power to earn money is, like all other facts in issue, a matter to be determined by the jury. While it is made to appear from the evidence that the verdict is substantial, it is equally apparent that it is not excessive and should not be disturbed on that ground.

Finally, it is argued that appellant's substantial rights were prejudiced by improper statements made by counsel for appellee in the closing argument to the jury. The statement complained of as shown by affidavit 's in effect that Daniel Weber was in his grave with every bone in his body broken. Appellants are not in position to urge this ground, since the matter complained of is not properly presented for review on appeal. Burdon v. Burdon's Adm'x, 225 Ky. 480, 9 S. W. (2d) 220; Southern Ry. Co. v. Thacker's Adm'x, 156 Ky. 483, 161 S. W. 236; Standard Sanitary Mfg. Co. v. Brian's Adm'r, 224 Ky. 419, 6 S. W. (2d) 491. However, if the matter had been properly presented, the statement complained of was not, in the circumstances, calculated to inflame or prejudice the minds of the jury. By counter affidavit made by attorney for appellee, it appears that this argument was made in response to argument made by counsel for appellants that the evidence for appellee was merely guesswork and indefinite.

Deceased was in his grave as a result of being struck by appellant's automobile with such force that a great number of the principal bones in his body were broken. In his zeal, counsel did exaggerate the extent of the injuries inflicted, but the jury heard the evidence as to the injuries detailed by attending physicians and could not have been misled, inflamed, or prejudiced be-

cause counsel said all the bones were broken instead of following the evidence and saying that the skull was fractured and the bones of both arms and legs were broken.

Finding no error in the record that would authorize a reversal, the judgment is affirmed.