## Norris et al. v. Payton et al.

(Decided June 14, 1935.)

RICHARDSON & REDFORD for appellants.

C. C. TURNER, MAX B. HARLIN, D. L. PENDLETON and LARIMORE & NICHOLS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The nature of this controversy and the subject-matter of the litigation, as well as the individuals composing the two contesting groups, are completely disclosed by our opinions in the cases of Payton v. Norris, 240 Ky. 555, 42 S. W. (2d) 723, and Maxey v. Payton, 248 Ky. 758, 59 S. W. (2d) 1005. From them it will appear that the controverted and litigated question is: Who has the right to extract the oil from under a 25-acre described tract of land located in Hart county, Ky., and formerly owned by a colored man by the name of G. H. Maxey? Payton obtained a deed to it from Maxey bearing date April 1, 1930. In early October of the same year he executed an oil lease on it to his associate litigants. Prior thereto, and on July 24th of the same year, Maxey, after the date of his deed to Payton, gave a similar lease to Norris and his associates, who are those whom he took in with him for exploration purposes. Norris' lease was recorded in the Hart county clerk's office on September 22, 1930, and Payton's deed from Maxey was similarly recorded seven days thereafter, or on September 29, 1930. In the discussion and disposition of this appeal, we will refer to the case of Payton v. Norris, supra, as "action No. 1," to the case of Maxey v. Payton, supra, as "action No. 2," and to the instant proceeding as "action No. 3."

Action No. 1 was originally filed by Payton and his lessees against Norris and his associates in the Hart circuit court to settle the question as to which group had the superior right to extract the oil from the 25-acre tract of land, and the decisive question in that case was: Which of the two groups of litigants had the superior equity in and to the contested right? The answer turned largely on the date of the deed from Maxey to Payton, i. e., whether it antedated the lease of Norris, or was it executed subsequently thereto; although another involved but undetermined question might have

also resolved the issue in favor of Payton and his lessees, conceding that his deed from Maxey might have been executed subsequently to Norris' lease. That undetermined question is the alleged possession of the tract of land by Payton through Maxey as his agent pursuant to a prior agreement and transaction that Maxey does not now seriously deny, and which he at one time swore to as correct. But the view we take of this case will not require a discussion of that question, growing out of notice furnished by such possession.

The trial court determined the issues and adjudged the controversy at the trial of action No. 1 in favor of Norris and others; but upon appeal by Payton and others to this court we reversed that judgment and directed the entry of one in conformity with that opinion, which was rendered on June 19, 1931, and a rehearing by Norris and others was denied in November of the same year. Pending the appeal of that case in this court, Maxey filed his equity action against Payton and others in the Hart circuit court, which is action No. 2, supra, and he sought in his petition therein a cancellation of his deed to Payton of April 1, 1930, and the enforcement of some alleged rights that he asserted against Payton. He averred in his petition that his deed to Payton was actually executed in September, 1930, and was predated back to April 1st of that year so as to precede and take precedence over Maxey's lease to Norris which, as we have seen, was executed in July, 1930. He averred that the deputy county clerk and another who was present when that deed was executed, together with Payton, entered into a conspiracy to force him to execute that deed and to predate it, and upon that ground he sought to cancel it, and to be restored to his rights growing out of his alleged transactions with Payton as they existed before its execution. At the trial of that action (No. 2, supra), he supported the allegations of his petition by his testimony, but acknowledged that he swore falsely in giving directly opposite testimony for Payton and others at the trial of action No. 1, supra.

Maxey's two young daughters at that trial (who had testified in action No. 1 but not upon that point) testified to a circumstance indicating that the Maxey deed was executed at a later date than April 1, 1930, but that circumstance was completely explained, so as

to nullify its probative effect on that issue, by the testimony of Payton and others in giving their evidence at the same trial of action No. 2. The trial court dismissed Maxey's petition, and he appealed to this court where we affirmed the judgment in the 248 Ky. Case, supra. The trial court's judgment in that action was rendered on June 13, 1932, and on September 26th thereafter this instant action (No. 3) was filed in the Hart circuit court under provisions of section 518 of our Civil Code of Practice, by Norris and others against Payton and others, seeking a new trial of action No. 1 upon the ground of fraud committed by Payton and others in procuring Maxey to swear falsely at the trial of action No. 1 in his testimony therein given in which he stated that his deed to Payton was executed on April 1, 1930, instead of in September in the same year which was the date of its alleged actual execution as he now contends. The trial court considered the record of the two actions, Nos. 1 and 2, in determining the demurrer filed to the instant new trial petition and sustained it, followed by its dismissal after plaintiffs therein declined to plead further, and from that judgment they prosecute this appeal. The records of the first two actions have been placed with this record and considered on the determination of this appeal.

Before taking up the contested questions for determination, attention should be drawn to the fact that Maxey and his two daughters, who attempted to fortify the contention he made at the trial of action No. 2, were witnesses and gave their testimony in action No. 1. Neither of the daughters were interrogated about the circumstance to which they now testify as substantiating Maxey's present contention that his deed to Payton was retroactively dated, and the testimony of the only additional witness, whom plaintiffs claim to have discovered since the trial of action No. 1 (and who did not testify therein), is directed to a minor circumstance only remotely sustaining Maxey's contention that he made in action No. 2 and which is the same one now being put forward in this action No. 3 as a ground for opening up action No. 1, by granting a new trial therein. So that, the testimony of the two daughters, and that of the other alleged discovered witness, can be classed only as newly discovered evidence and is not technically embraced by the alleged discovery of perjured testi-

mony given by Maxey in the trial of action No. 1, although, as we shall presently see, the two classes of testimony, i. e., that of ''newly discovered testimony,'' and ''perjury'' given at the trial, are classified by courts, as to their effectiveness in applications for a new trial, in the same category as will be seen from this text in 20 R. C. L. 300 and found in the latter portion of section 80: ''And in any case an admission of perjury will not call for a new trial, if, eliminating such evidence, there is still other evidence sufficient to support the judgment.''

Courts are by no means in accord as to the effect of perjured testimony given at the trial, in which the movant's adversary was successful in proceedings for a new trial. A number of courts decline to grant a new trial for alleged perjured testimony in any case, unless it be clearly established that it was given in its perjured form with the knowledge, consent, and procurement of the successful party. The ground upon which that rule is formulated is, that to hold otherwise would not only open the door for fraud, but would tend in its application to unlimited protraction of litigation which it is the cherished policy of the law to terminate as speedily as possible consistent with each litigant receiving justice in the determination of his rights. Other courts apply a less restricted rule; but all of them in giving effect to alleged perjury, on applications for a new trial, follow the well-established rule stated in the text from R. C. L., supra, to the effect that a new trial will not be granted because of perjured testimony, or for newly discovered evidence or its changed and altered condition because of the alleged perjury (both of which must be clearly established) unless it would at a second trial produce a different result, or if the action is an ordinary one, such changed or altered condition would probably produce a different verdct by the jury that tried the case. All of the cases here involved were and are equity ones triable by the court as a chancellor and whose judgment upon the facts this court reviews with a de novo consideration, and, if convinced that the facts were wrongfully adjudicated under the testimony, we have authority, and it is our duty, to adjudge them in accordance with the evidence heard at the trial.

The text in 20 R. C. L. 289, sec. 72, says: ''Applications on this ground [discovered evidence] are not

favored by the courts, and in order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice as a last resort to escape the consequence of an adverse verdict, such applications should always be subjected to the closest scrutiny by the court, and the burden is upon the applicant to rebut the presumption that the verdict is correct and that there has been a lack of due diligence." To the same effect is the text in 46 C. J. 245, sec. 216, in which this language appears: "In determining whether a new trial shall be granted on the ground of newly discovered evidence, courts while keeping within well established legal limits endeavor to do what the interest of truth and justice require." On page 256 of the same volume another well-settled principle of law is thus stated: "A new trial will not be granted to permit a witness to testify to facts forgotten or overlooked by him, or to which his attention was not called, when giving his testimony at the trial." To that text is cited the domestic cases of Cooper v. Williamson, 198 Ky. 62, 248 S. W. 245; Home Insurance Co. v. Cincinnati, etc., Ry. Co., 182 Ky. 778, 207 S. W. 487, together with many others.

On page 263 of the same volume, in stating the probable effect of the newly discovered evidence or, as we have seen, the alleged perjured testimony, the writer of the text states the universal rule to be: "A new trial should not be granted where it is entirely within the realm of speculation as to what may be testified to, and the effect of the testimony. According to the weight of authority, it must be sufficiently important to make it probable that a different verdict will be returned on another trial. A new trial may be denied where, if all the newly discovered evidence had been offered and received at the trial, the findings of the trial court would still have sufficient support in the evidence." A great many cases from federal and state courts, covering more than two pages, are cited in note 15 to that text, including many from this court recorded on page 264, some of the latest of which are: Bass v. Louisville, etc., R. Co., 216 Ky. 796, 288 S. W. 738; Finnigan v. Floyd Garage, etc., Co., 214 Ky. 416, 283 S. W. 402; Stevens v. Potter, 209 Ky. 705, 273 S. W. 470; Illinois Central R. Co. v. Lashley, 208 Ky. 374, 270 S. W. 806; Reid v. Craig, 204 Ky. 151, 263 S. W. 678; Berea Bank, etc., Co. v. Mokwa,

194 Ky. 556, 239 S. W. 1044, and a long list of others antedating the cited ones, but which will not be here inserted.

In the cases of Johnston v. Williams, 187 Ky. 764, 220 S. W. 1057, and George v. Sohn's Adm'r, 191 Ky. 428, 230 S. W. 904, we considered the applicable rule governing actions and motions for new trials, based upon the same grounds affecting the probative weight of the testimony, and in which we adopted completely the rule of both texts, supra, as was previously done by us in the case of Louisville & N. R. Co. v. Ueltschi's Adm'r, 126 Ky. 556, 104 S. W. 320, 321, 31 Ky. Law Rep. 931. The rule as adopted in this state and by which we and others of its courts are governed was thus stated in that (last cited) case: "New trials are reluctantly granted; and, when disputed matters have been fully litigated, the courts will not reopen a case for the purpose of enabling the defeated party to introduce new evidence, unless the reasons why it should be done are very strong, and it is made to appear with reasonable certainty that injustice or wrong would result unless the relief was granted, and another opportunity allowed to relitigate the questions in issue. This court has frequently had before it applications for new trials upon the ground of newly discovered evidence, and it has uniformly been held that a new trial will not be granted when the point upon which it is sought was in issue in the former trial, unless the discovered evidence be of such a permanent and unerring character as to preponderate greatly or have a decisive influence upon the evidence to be overturned by it. And especially does this rule obtain with respect to parol testimony. Price v. Thompson, 84 Ky. 219, 1 S. W. 408, [8 Ky. Law Rep. 201]; Torain v. Terrell [122 Ky. 745] 93 S. W. 10, 29 Ky. Law Rep. 306; Mercer v. Mercer, 87 Ky. 21, 7 S. W. 307, 9 Ky. Law Rep. 870; Allen v. Perry, 6 Bush [Ky.] 85; Richardson v. Huff, 43 S. W. 454, 19 Ky. Law Rep. 1428."

In applications of this kind, the court has not only the right, but it is its duty in order to conform to the applicable rule, supra, to look to and consider what transpired in prior litigations pending before it touching and concerning the involved issues between the same parties and which course was pursued

here by the trial court in this case, and the two records of actions Nos. 1 and 2, as we have said, have been placed with this record on this appeal. From them it appears that Payton and his witnesses, including the clerk who took Maxey's acknowledgment to the deed, controvert and most emphatically deny his present contention that it was predated from the time he claims it was executed in September, 1930, to April 1st of the same year, being the date it bears and to which the officer certified. Maxey himself so testified at the trial of action No. 1. We also find from the same sources that Maxey in the trial of action No. 2, and whose altered testimony appellants rely on in this case, materially altered his testimony as given in action No. 1 on other points and in a more or less incredible manner, and in which he is contradicted not only by the express testimony of Payton and his other unimpeached witnesses, but also by some circumstances in the case the truth of which he admits. Not only so, but the lessees of Payton before they accepted their lease from him obtained Maxey's affidavit, stating that he owned no interest in the 25 acres of land and that he had deeded it to Payton by his deed of April 1, 1930, and which precaution was taken on their part because the courthouse at Munfordville had been destroyed by fire and they wished to be assured of the title before paying the consideration that they promised for the lease on that tract, amounting to about $1,100, besides giving one-eighth of the oil produced as royalty to the lessor. In addition thereto, Maxey stated and made oath to the assessor of Hart county for the assessing years, beginning in 1930, that he owned no land because he had conveyed it away, and, following that date and, perhaps, prior thereto, Payton assessed and paid the taxes on the land.

In addition to the foregoing facts impeaching the credibility of Maxey's changed testimony, there is another potent one which virtually wipes out all of what is left of it, and which is: That Payton's lessees had in the meantime largely developed their lease on the 25 acres by drilling some five or six wells, each of which was and is quite profitable. If Maxey succeeds and obtains an adjudication upon the altered attitude that he has taken since such development, he will establish his right under his lease to Norris, to one-eighth of all the oil that has heretofore been extracted as well as to all of it that might hereafter be taken from the land, but

none of which profits would he receive if the judgment directed by us in action No. 1 should remain unmolested. His motive, therefore, is outstanding and predominant, and emphasizes the conviction that the false testimony that he has given in his two diametrically opposite positions is that which appellants now rely on to obtain the relief they seek.

Therefore, if we were to grant a new trial in this case and Maxey and his witnesses should testify at the retrial as they did in action No. 2, and Payton and his witnesses should testify as they did in that action and as they also did in action No. 1, with the contradictions of Maxey and his witnesses because of having sworn the directly opposite, we as a reviewing court, and the trial court as an original one, would be forced to determine the issue as we directed in our opinion rendered in action No. 1, and which was followed by a judgment in accordance with our directions.

The rule, supra, prescribing the duties of this and other courts in such situations and under such conditions is bottomed upon the idea and theory that courts are not organized for the purpose of furnishing entertainment by going through the form of repeated trials. On the contrary, their function is to furnish each litigant a fair opportunity to present his case, and, when done, to see to it that he abides by the result reached by the court, unless he brings forward convincing matters and facts possessing sufficient probative value as to produce the conclusion that a miscarriage of justice has occurred, and that a new trial is necessary to rectify it. We are convinced that no such showing is made in this case, but that, on the contrary, if we should sustain the petition and order the new trial which plaintiffs seek herein, it would and could have no other effect than to take up the time of the trial court in a rehearing of the testimony to be followed by the same character of judgment that we ordered and directed in our opinion rendered in action No. 1.

The conclusions thus far reached apply with equal force to all of the appellees in this action, including Payton, the lessor, as well as his lessees. But there is another ground which is exclusively applicable to the latter (lessees), and which effectually prevents the granting of a new trial as to them. Under the directed

judgment in action No. 1, it was determined that Norris did not acquire his lease under circumstances so as to gain for him a preference over the rights of a prior equity, which in this case was the one obtained by Payton in his then unrecorded deed of April 1, 1930. His (Payton's) lessees did not acquire their right until October, 1930, after his deed from Maxey was recorded in the county clerk's office, and the record of that office as it then stood showed that his (Payton's) claim to the land was prior in time and prevailed over Norris' lease. Such lessees had no knowledge at the time that they obtained their rights of any of the alleged fraud now relied on to defeat their claim. They were not parties to it, and there is not a breath of testimony in any of the records nor an intimation by any one that they were in any wise participants in such alleged fraud. That being true, under the final judgment rendered in action No. 1, their equity must prevail over that of Norris and associates since, as pointed out in our opinion in that case, the latter were not bona fide acquirers of their interest because the consideration had not been paid but was purely executory. Therefore, the rights of Payton's lessees can in no event be affected, even if the new trial as to Payton should be granted, and which is an additional reason why the judgment should be affirmed as to them.

Viewing the case as we have outlined it, it becomes unnecessary for us to express our views upon the general question of the effect of perjury, abstractly speaking, upon applications for new trials based exclusively on that ground, since, as we have seen, it should be considered and given the same effect as its twin ground of newly discovered evidence relied on and urged to obtain the same relief.

Wherefore, for the reasons stated, the judgment is affirmed; the whole court sitting, except Judge Richardson.