## Staton v. Smith.
May 31, 1940.

R. Monroe Fields, Judge.

E. D. Stephenson and Willis Staton for appellant.

L. J. May for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On July 6, 1938, appellant began action seeking to recover of appellee an attorney's fee for services alleged to have been rendered her in three actions; one a suit

by appellee against her husband John Smith, seeking to cancel an ante-nuptial contract. This was followed by a suit by John Smith v. Ida Smith for divorce, and which led to a suit for alimony or a settlement of property rights. In the original petition appellant sought to recover $1,500 which he asserted was due because appellee had employed him and agreed to pay him a reasonable fee.

He later amended, raising the fee to $2,000, which he says was reasonable. He alleged that he was attorney of record in the cases; actually appeared in the taking of depositions, and conferred at times with his client. By this pleading he sought to bring in the former husband, and Childers and Barrett, who were regularly employed as attorneys for appellee in her litigation. One contention was that the husband entered into a settlement of property rights through his attorneys, whereby the pending litigation was settled upon payment of $25,000 to the appellee, plus the agreement that the husband was to provide for and maintain appellee and the children, in accordance with legal requirements.

It was then alleged that "he paid said money to Ida Smith without making any arrangements to pay your petitioner's fee, and therefore he is legally bound for a fee, and your petitioner should recover of him the sum of $2,000, which amount should be adjudged against John and Ida Smith jointly and severally," same being a reasonable fee for his services. However, it is added that "John Smith schemed and connived for the fraudulent purpose of cheating your petitioner out of" his fee. With whom he connived is not divulged.

Bringing into the case the recognized attorneys for appellee, he alleged that she paid "his fee to the new defendants herein, Childers and Barrett," since they collected $4,000 and divided the same equally but "failed and refused to pay to petitioner any part thereof," and hence for the "purpose of adjustment of rights, the two attorneys should be (and they were) made parties to the action. Appellant then pleads in the alternative, "that if the court should be of the opinion that said money was paid to Childers and Barrett for them and your petitioner," then he should have judgment against them jointly for one-third of the $4,000, "but he does not concede that he should accept that in full settlement as to

the liability of John and Ida Smith, but only between himself and Childers and Barrett.''

So, the pleader contends that if the $4,000 was intended by the defendants to be divided with ''your petitioner and Childers and Barrett,'' he should be paid one-third of the total, and to recover the difference, $667, from John and Ida Smith, but if Childers and Barrett were paid $4,000 for the joint benefit of the three attorneys, he should recover from them two-thirds of the amount paid, and from Ida and John Smith the one-third, ''so as that the total principal sum would be $2,000.''

While there was no motion to elect, each defendant demurred to the petition as amended; appellee answered prior to the court's ruling thereon. At a later date the court sustained the demurrers of Childers and Barrett, without objection; it is not now contended that the ruling was erroneous. Plaintiff declining to plead, the petition was dismissed as to the attorneys.

Appellee and John Smith filed separate answers, the former denying in toto the allegations of the petition, asserting that she never employed plaintiff to represent her in the then pending actions. Affirmatively it was said, that while the actions were pending, appellant approached her and volunteered his services in the preparation, prosecution and defense of the divorce suit, but never mentioned the other proceedings. She says she and appellant were closely related, and his reason for interesting himself in her behalf was because of the kinship. He told her he would make no charge against her for such services as he might render, but that he ''could make defendant (John Smith) pay his fee, and would do so,'' if she would agree for him to appear with her other counsel, in which proposal she acquiesced. She says she never agreed to pay appellant anything for his tendered services. We note that this answer was not controverted.

John Smith denied that appellant ever appeared as ''his'' attorney, but admits the compromise agreement, made with Childers and Barrett, and the payment of the agreed sum in settlement. He denied the allegation of connivance, and alleges that he never agreed to pay appellant any sum for services, and says that he had no knowledge of the manner of distribution of the

compromise sum. Childers and Barrett, prior to the court's ruling on their demurrer to the petition as amended, jointly answered, denying the allegations of the pleadings of appellant.

With the pleadings in the condition stated, the court after hearing proof directed the jury to, and it did, return a verdict in favor of John Smith. The court submitted the issue as between appellant and appellee under an instruction which, in substance, told the jury it should find for appellant a reasonable sum for alleged services, not to exceed $1,500, unless it believed from the evidence that his services were rendered voluntarily, or under such circumstances that it was understood between the parties that plaintiff was to make no charge therefor. A rather favorable instruction, since the court apparently concluded that services were rendered.

The jury unanimously found for appellee; judgment was entered accordingly, and appellant filed motion for a new trial, supported by seven or more grounds. However, as we observe from the brief in behalf of appellant, it is only contended that (a) the court should have allowed a new trial because of the misplacement of a deposition of John M. Smith; (b) newly discovered evidence; and (c) that the verdict was flagrantly against the evidence. In order to determine these contentions it becomes necessary to state a portion of the evidence, avoiding detail as much as possible.

At the beginning of the litigation appellant was absent from Pike County. Upon his return later he heard of the difficulties existing between the parties. Incidentally, it appears, he met appellee, who was his cousin, and naturally there arose a discussion of the existing marital difficulties. Appellant says appellee told him she had been looking for him to help her in her suits. He assured her that it was not too late, if his entry was agreeable to her other attorneys. Later appellee advised him that his assistance would be agreeable, though they doubted if they needed it. Appellant says, in substance, that his fee was to be a reasonable sum, not fixed since he did not then know what course the litigation would take, or how long it would last.

It was stated, and not denied, that he held several conferences with appellee in respect of the litigation; took a deposition, and reviewed others, and conferred

with appellee's theretofore employed counsel. His name appeared as attorney of record in one or more of the suits, though written on the papers by him. His main contention as to service and the value thereof consisted, as he says, in forcing the attorneys to make a better settlement between the husband and wife as to property rights, and maintenance. He insists that the attorneys, Childers and Barrett, were about to adjust all difficulties by the payment of $15,000 to appellee by the husband. He says he knew of the financial situation of the husband and protested with the attorneys that the sum was inadequate, and suggested $40,000, and a clause in the contract for the future maintenance of the wife and children, which clause was inserted, and the money sum raised to $25,000, which was paid, thus disposing of all the litigation.

The check for $25,000 was cashed shortly after the agreement was closed. Appellant insisted that no distribution be made in his absence. He also says at one time appellee said to him, "Mr. Smith wants you and Mr. Childers to agree on a fee," but he advised her he did not want Mr. Smith's attorneys to fix his fee. When the check was cashed he saw appellee, and told her he had not received his fee. She said, "Lord have mercy, wasn't the check for $4,000 I gave him for you? I understood it was to pay all of you."

In his behalf appellant called six or more witnesses, who testified as to facts showing that he had rendered some service. Also to show that appellee, by herself and through others, recognized him as being in the case, which, however, is not the pivotal question. There was evidence also to show that appellant was expecting to be paid a fee, however it is quite noticeable that more than three of his own witnesses say that on more than one occasion he told appellee to leave the whole matter to him, and he would see to it that John Smith paid all attorney fees.

Appellee admitted that appellant had rendered some service. She says after the litigation had been begun, at a time when appellant was absent, she saw him, incidentally, and entered into a discussion of her pending and expected difficulties. Appellant told her he "would like to be in the case." He had expressed his willingness to help her solely on the ground of close

relationship. When the desire to "be in the case" was expressed, it was suggested by one or the other, that it would be the proper thing to see her other counsel to ascertain if his proposal was agreeable to them.

Later, and about the time of settlement or distribution, she says her attorneys suggested that she make a contract with appellant, and she approached him on the subject, and he told her there was no need for that, "If I did you would have to pay it. I am not charging you anything; if there is any expense to this suit, Mr. Smith will pay it." This statement was reported to her attorneys.

The various attorneys, some who represented Mr. Smith and those employed by appellee, so testified as to show that appellant did render some service, though minimized to a degree. Such testimony did not to any great extent throw light on the sole issue. One of Mrs. Smith's attorneys says that in the spring, after the litigation had begun the prior December, appellant and appellee came to their offices. Appellant said he was her cousin, and he wanted the attorney to "take care of her," and he was assured that she would be properly represented. He "told us he was her cousin and would be glad to advise with and assist us in any way he could."

Another of her attorneys was not sure of the visit of appellant and Mrs. Smith, but says appellant came in later and discussed the case. Neither was sure whether appellant discussed the raising of the amount to be paid appellee, or the maintenance clause. All the attorneys in the original litigation, particularly those representing appellee, make it quite clear that there was no discussion of fees for appellant until about the time, or shortly after the settlement was made. It was also their impression that up to this time his services were voluntary, because of the statement as to the close kinship. However, it is hardly necessary to go into detail on the matters of testimony, a greater part of which related to services, which matter does not seem to be contested with any vigor. The issue was a simple one, as above stated.

The argument in brief for appellant is based chiefly on the following contentions: He had taken depositions of J. Matt Smith; during the trial it was discovered that one of them had not been placed in the transcript by the

stenographer. Her affidavit shows this to have been a fact. Appellant's affidavit alleges that the deposition was omitted from the papers by the examiner, and could not be located, "to which fact he called the court's attention at the time."

There is no claim that he moved the court for a continuance, nor is there shown any effort on his part to bring the examiner in and have her read from her notes, which no doubt could have been done without delaying the trial. The deposition was attached to the examiner's affidavit, and lodged just a few days after the trial closed. We have examined the copy, which is not certified in any manner, and it does not present to our minds such evidence as would have influenced the verdict of the jury in any way. The witness, who was a brother-in-law of appellee, merely says that appellee asked witness to go to Childers and Barrett and "ask them if it would be agreeable for her to get or engage appellant's services in the case," and he saw Mr. Barrett and he said it would be "all right for her to employ" appellant in the case; that he didn't need him, but if she wanted him it would be all right. There was no dispute on this question. The proof, if admitted, would not lend any color to the question as to whether appellee intended to pay for appellant's services.

John Matt Smith says in an affidavit that appellee came to him on one occasion, apparently some time after the suits were filed, since "she was worrying because she could not get a speedy trial, and asked me what I thought Willis would charge for his work. I asked, 'What are the other lawyers charging;' and she said they had not fixed the amount." Affiant did not tell appellant about this conversation until after the trial, but it is noted that John Matt gave his deposition in behalf of appellant on two occasions. Obviously this did not constitute the kind and character of newly discovered evidence which would warrant the court in granting a new trial, as will be later demonstrated.

Appellant vigorously urges that he discovered after the trial that the two attorneys of appellee, who had testified on the trial, had suppressed competent and material testimony which he did not discover, nor could have discovered, until after the trial, which he says would have enlightened the jury to some extent. He states

that after the trial "one of the attorneys laughingly said, 'we had a thousand dollars set apart for him,'" which the attorney admits he might have said—"I wouldn't say that I didn't because, as I thought, Mr. Childers and myself did set apart a thousand dollars." This was developed not by affidavit of the attorney or attorneys; they testified orally on the motion for a new trial.

Childers also said, as now charged by appellant in his affidavit, that at one time, and after the check for $25,000 had been turned over to appellee and her attorneys, or perhaps cashed, appellee suggested that they take appellant's fee along with theirs, they to settle with appellant, which proposal was strenuously declined. It was also shown that appellee wanted to net $20,000 from the compromise check; the attorneys thought well of this, and agreed to reduce their fee to $1,900 each, so that she could pay a $200 note at the bank, and pay what she was "aiming to pay," which they inferred was in part a fee to appellant.

It may be admitted for argument's sake, that the conversations related would indicate an intention on the part of appellee, or that there was an expectancy that she would have to pay a fee. It is manifest, however, that the matter of fee, referred to by attorneys, arose long after the entry of appellant into the litigation and rendition of services. To us it is apparent such testimony would not have influenced the jury on the question as to whether or not it was understood by the parties that appellant's services were to be voluntarily rendered.

Aside from this, both these attorneys were witnesses on the trial, testifying it is true for appellee. They were put through a strict cross-examination, which began with the entry of appellant, and led into the matters occurring during the discussion of the settlement, up to and including the distribution of the proceeds, and the payment of counsel fees. For appellant to say now that this is such character of newly discovered evidence, as would warrant a new trial, is merely to say that when one has a witness on the stand, reluctant, or otherwise, and overlooks the asking of a supposedly material question, he is entitled to a new trial. The fixed rule of procedure, as evidenced by our opinions, is otherwise.

That it could have been discovered before, or dur-

ing the trial, is made obvious from a glance at appellant's amended petition. In this he alternatively charged that appellee paid at least a portion of his alleged fee to appellee's other attorneys, and they failed to account. Also that when the check was delivered, he went to Childers and Barrett and asked them to hold the check to protect him. So, it may be said appellant lost the opportunity to bring these matters out fully when the witnesses were before him on the trial.

The rule, as evidenced by opinions of the court, is well stated in 46 C. J. p. 256: "A new trial will not be granted to permit a witness to testify to facts forgotten or overlooked by him, or to which his attention is not called on the trial." This rule was quoted with approval in Norris v. Payton, 260 Ky. 106, 83 S. W. (2d) 870, in which reference is made to Cooper v. Williamson, 198 Ky. 62, 248 S. W. 245; Home Ins. Co. v. Cincinnati, etc., Ry. Co., 182 Ky. 778, 207 S. W. 487. See also Sesmer v. Barton's Adm'x, 248 Ky. 15, 16, 57 S. W. (2d) 1020; Benge's Adm'r v. Marcum, 194 Ky. 121, 238 S. W. 174.

In respect of the contention that the verdict was flagrantly against the evidence, we may say that we have read the evidence carefully, and are justified in saying that there is nothing therein, or pointed out to us, to indicate that the jury did not give it fair consideration. Most assuredly there is nothing to indicate any bias or prejudice. The issue was simple and, of course, the answer depended in the greater part on the conflicting testimony of appellant and appellee.

The jury heard the parties and their supporting witnesses. It had the right to believe some and disbelieve the others, likewise to weigh and measure all the evidence, and the fact is, though it was not an issue, the jury from appellant's supporting proof might well have conceived the notion that during all the times, from the beginning to the close, appellant was looking to the husband for the fee. Finding no error that would author ize us to do otherwise, we must affirm the judgment.