## Vaughn v. Taylor.

## Tincher v. Same.

Dec. 5, 1941.

560

I. Jay Miller and Garvice D. Kincaid for appellant.

Wm. B. Gess and Job D. Turner, Jr., for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

These two cases arise out of the same state of facts and by agreement they were tried together in the circuit court. They have been briefed together here and both appeals will be disposed of in this opinion.

Appellant, D. L. Vaughn, sued appellee, DeWitt Taylor, for $600 damages done his automobile by reason of appellee's alleged negligence in driving his automobile into that of Vaughn's. Taylor's answer denied any negligence and contained a counterclaim against D. L. Vaughn and a cross-petition against his son, Wilfred Vaughn, alleging that the father's car was driven by his son and agent, Wilfred, who negligently ran same into Taylor's car, thereby damaging it and inflicting personal injuries on Taylor and in addition causing him special damages such as doctor and hospital bills, railroad fare and the loss of the use of his car; for all of which he sought to recover a total of $3,579.71 against the two Vaughns.

Preston Tincher, a passenger in the Vaughn car, suffered personal injuries and he sued Taylor for $10,000. Taylor's answer to this action denied negligence and pleaded contributory negligence on the part of Tincher, also, that the negligence of Wilfred Vaughn, the driver of the car in which Tincher was riding, was the sole cause of the accident.

The verdict was against both D. L. Vaughn and

Tincher: and on the counterclaim and the cross-petition the jury found for Taylor against both D. L. and Wilfred Vaughn in the sum of $800. There is no appeal by Wilfred, but his father and Tincher appeal and insist that the judgment should be reversed on two grounds: (1) A new trial should be granted them because of newly discovered evidence; (2) incompetent evidence was admitted in behalf of Taylor over their objections.

The accident happened about 5 P. M. on April 10, 1939, on the Lexington-Richmond Highway, some eleven or twelve miles from Lexington. The road was wet and slippery and it was raining at the time of the accident. Wilfred Vaughn, 18 years of age, was driving his father's car west on the highway and was going to Lexington to meet his father. There were two persons in the car with him, Preston Tincher, 55 years of age, and Gordon Adams, a 19 year old youth, both of whom were riding on the front seat with the driver.

All three testified the Vaughn car, a Pontiac coach, was proceeding up-grade on its right (north) side of the road at some 30 or 35 miles per hour, and that the Taylor car, a Ford coupe, was first seen as it came over a little rise at a distance variously estimated by them from 150 to 300 feet traveling on its left (north) side of the road at a speed of from 50 to 60 miles per hour. They each testified that the Ford was swerving from one side of the road to the other and that Wilfred pulled to his right as far as he could, but the left front ends of the two cars collided, resulting in the Ford going into the ditch on the south side of the highway and pulling the left front wheel of the Pontiac about one foot to the south of the center line of the pavement. None of the occupants of the Pontiac heard the horn on the Ford. Wilfred and his two companions testified they were rendered unconscious by the impact and remembered nothing which happened thereafter.

Taylor and a hitch-hiker, Andrew Traynor, riding with him, both testified he was making approximately 35 miles per hour and was on his right (south) side of the road and as they came over the little rise they saw the approaching Pontiac some 150 yards away. It was traveling at a speed of about 60 miles per hour on its left (south) side of the road and was swerving from one side of the road to the other. Taylor sounded his horn, slowed his speed and pulled his car so far to the

right that his right wheels were in the ditch at the edge of the road when the collision occurred. At the time of impact he had reduced his speed to about 15 miles per hour and after the collision the Ford traveled only six or eight feet while the Pontiac went a distance of some forty feet before its left front wheel went into the ditch on the south side of the highway.

As is not unusual in such cases, the occupants of the two cars give exactly opposite versions as to how the accident occurred. The evidence is also conflicting as to the position of the Pontiac on the highway immediately after the accident. Bert Carr and his wife, also Jesse Himes, all place it "angling" across the north side of the highway with its left front wheel about a foot over the center line. Taylor, Traynor and two county patrolmen, Doyle and Estes, who arrived soon after the accident, all place the Pontiac with its left front wheel in or near the south ditch line, with the rear of the car extending at an angle to about the center of the highway. But there is some conflict in the evidence as to whether the Pontiac had been moved before the two patrolmen arrived.

The uncontradicted testimony shows the pavement was 20 feet wide with three and a half foot shoulders; that adjacent to the north shoulder there was practically no ditch line, nor was there a fence along the north side of the highway. Had Taylor approached on the north side of the highway as Wilfred Vaughn and his companions testified, there was nothing to have prevented Wilfred from pulling the car he was driving to the right a sufficient distance to let Taylor's car pass with safety. There was testimony of a track 30 or 35 yards in length made by the Taylor car on the south shoulder before the point of collision.

It is not denied that a red truck going west (the same direction the Pontiac was traveling) drove up immediately after the accident and that Tincher was put in this truck and taken to a Lexington hospital. The driver of the truck was unknown to any of the parties in either car figuring in the accident. These cases were tried on June 7, 1940, and with an additional motion for a new trial filed on June 17, on the ground of newly discovered evidence, was attached the affidavits of Ed Waits, the driver of the red truck, and of Mr. Miller, one of the attorneys for the appellants.

Waits' affidavit is to the effect that his truck was traveling immediately behind the Pontiac and when he blew his horn to pass it he saw the Ford approaching, which caused him to drop back behind the Pontiac. He then details the facts concerning the accident just as they were given in the testimony of Wilfred and his companions, directly contradicting the testimony of the occupants of the Ford.

Waits' affidavit further stated he did not give his name to any of the people involved in the accident, that he left Lexington about one week thereafter, going to Baltimore, Maryland, where he resided until the latter part of April, 1940, when he returned to Lexington. That he read a newspaper account of the trial and remarked to an acquaintance that he had witnessed the accident but that no one involved therein knew his name; that his acquaintance reported this fact to D. L. Vaughn, who got in communication with affiant on June 16th and took his affidavit.

The affidavit of Mr. Miller is to the effect that neither of the appellants nor he had any information before the trial as to the identity of the driver of the red truck; that "they used extraordinary diligence and exerted every effort to locate the driver of said red truck who, they learned after the trial, was the newly discovered witness, Ed Waits * * * he was discovered since said trial and could not with reasonable or ordinary diligence have been discovered before"; that Waits' evidence is not cumulative and is of such decisive character as to be reasonably calculated to change the result of the trial.

Appellants most earnestly argue that as the only eye-witness testifying as to how the accident happened were the occupants of the cars and as two of the three persons in the Pontiac are parties to this litigation, the testimony of Waits as a wholly disinterested witness would have a decisive effect on the outcome of another trial. They admit the rule is that a new trial will not be granted on the ground of newly discovered evidence where it is merely cumulative, but contend that this case comes under the exception to that rule, which is to the effect that a new trial will be granted where such cumulative evidence is sufficient to render clear that which was doubtful, citing Torain v. Terrell, 122 Ky. 745, 93 S. W. 10; Howell v. Standard Oil Co., 234 Ky. 347, 28

S. W. (2d) 3; Cincinnati, N. O. & T. P. Ry. Co. v. Snow, 284 Ky. 58, 143 S. W. (2d) 863.

But as we regard Waits' affidavit, his evidence would be purely cumulative and would not have a decisive effect on the verdict should a new trial be granted. His affidavit showed he would testify to nothing that the occupants of the Pontiac did not state while on the stand, and one of them, Gordon Adams, was a disinterested witness. Waits is a newly discovered witness, but certainly his testimony will not be new. From his affidavit, his testimony would only corroborate the appellants and impeach appellee and his witness, Traynor.

Appellants knew of Waits although they did not know his identity, yet no motion was made for a continuance. They cannot take the chance of a trial without him and then when the result is adverse seek another trial because his testimony is now available. Waits' testimony could not reasonably be calculated to change the results on another trial in view of the physical facts showing the track of the Ford for 30 or 35 yards on the south shoulder of the highway and showing there was neither a ditch nor a fence on the north side thereof to prevent young Vaughn from turning far enough to the right to avoid the accident if the Ford was actually approaching on Vaughn's side of the highway.

The authorities are legion that courts do not favor new trials and will not grant them on the ground of newly discovered evidence unless it is of such an unerring character as to preponderate greatly or have a decisive influence upon the evidence to be overturned by it, and unless it is shown it could not have been discovered before the trial by the exercise of ordinary diligence. One or two of the more recent cases dealing with the subject are Holliday v. Tennis Coal Co., 264 Ky. 371, 94 S. W. (2d) 657; Woltering v. Weber's Adm'x, 253 Ky. 55, 68 S. W. (2d) 440; Norris v. Payton, 260 Ky. 106, 83 S. W. (2d) 870.

It will be noted that the affidavit of Mr. Miller, attorney for appellants, stated that "they used extraordinary diligence and exerted every effort to locate the driver of said red truck * * * he was discovered since the trial and could not with reasonable diligence have been discovered before." That assertion by Mr. Miller is but a conclusion and does not contain a state-

ment of fact. Nowhere does he state what he did to locate Waits or why he was unable to do so, other than that Waits was absent from Fayette County. This was far from being sufficient. Woltering v. Weber's Adm'x, 253 Ky. 55, 68 S. W. (2d) 440. In Cincinnati, N. O. & T. P. Ry. Co. v. Snow, 284 Ky. 58, 143 S. W. (2d) 863, the railroad claim agent made four or five investigations of the fire and failed to discover the witness, whose testimony we held entitled it to a new trial, because of his reticence in a desire to avoid testifying. It is not sufficient for the party seeking a new trial to allege he did not and could not have discovered the new witness by ordinary diligence, but it is incumbent upon him to allege what effort he actually made to discover such witness.

Inasmuch as we regard the testimony as being of an indecisive character which Waits' affidavit states he would give, and inasmuch as the affidavit of Miller does not show due diligence was exercised in attempting to locate this witness before the trial, we are constrained to hold the trial judge did not err in refusing to grant a new trial.

We come now to the question of the alleged incompetent evidence admitted in behalf of appellee. Forest L. Rodgers, through whom Taylor purchased his car in Detroit, testified that he was service manager of a Ford dealers organization and had been in the automobile business for 23 years, and he further testified as to the value of Taylor's car in Detroit immediately before and immediately after the accident. Of course, the measure of damages is the difference in the fair market value of the car at the place of the accident immediately before and immediately after the accident. Southern Ry. Co. v. Kentucky Grocery Co., 166 Ky. 94, 178 S. W. 1162; Adams & Sullivan v. Sengel, 177 Ky. 535, 197 S. W. 974, 7 A. L. R. 268; Banner Fork Joint R. Co. v. Brock, 219 Ky. 652, 294 S. W. 188. Taylor had bought his car new in Detroit fifteen days before the accident and had driven it between 600 and 700 miles. His testimony showed he was familiar with the value of automobiles and he testified what was the fair market value of his car at the place of the accident immediately before and immediately after the accident. We might add that it is within the common knowledge of most people that Ford cars are manufactured in Detroit and are cheaper

there than elsewhere. Therefore, we do not think Vaughn was prejudiced by the testimony of Rodgers.

Complaint is further made that Taylor testified as to having "water on his knees" as a result of the injury, and that he had expended $94 for hospital and medical bills, when such testimony was unsupported by a physician. It would hardly take a physician to diagnose such a common and well-known condition as "water on the knee." The failure of a physician to testify that the hospital and medical bills were necessary would go to the weight rather than the competency of Taylor's testimony on this point.

Other technical criticisms are made of Taylor's testimony as to his damages, but we regard them as being of a trivial nature. The damage to his car was shown to be $550; his hospital and medical bill $94; rent on a car to be used in his business while his own car was being repaired $75; all of which aggregates $719. This left only $81 that could have been allowed him for pain and suffering and for incidental expenses such as railroad fare, etc., resulting from the accident. While the testimony as to Taylor's pain and suffering and as to certain incidental damages is not as satisfactory as it might have been, we cannot hold that the evidence of the damages included in the $81 was so unsatisfactory as to authorize a reversal of the judgment. Nor can we say the substantial rights of D. L. Vaughn were prejudiced by such testimony, and under Sections 134, 338, and 756 of the Civil Code of Practice, the judgment should not be reversed. Jefferson Garage v. Salatin, 233 Ky. 686, 26 S. W. (2d) 525; Standard Oil Co. v. Brittain, 236 Ky. 625, 33 S. W. (2d) 625.

The judgments in both cases are affirmed.