## Morris v. Thomas.

May 20, 1949.

Rehearing denied June 24, 1949.

Karem & Karem and Lawrence S. Grauman for appellant.

W. J. Goodwin and D. L. Frederick for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The suit determines the ownership of a house and lot in Louisville. The property was deeded to the appellant, Mrs. Bessie Morris, but the appellee, Mrs. Agnes Thomas, contends that she furnished the money to pay for it and had the title placed in the appellant upon her promise to convey it to her. She prayed enforcement of a parol trust and specific performance. The chancellor confirmed a report of the commissioner and found for the plaintiff.

The appellant argues that (1) her demurrer to the petition should have been sustained, (2) the evidence does not support the judgment, and (3) she should have been permitted to take additional proof.

Accepting the allegations of the petition and the plaintiff's evidence as true, they do not establish the kind of equitable resulting trust forbidden by KRS 381.170, declaring that when a deed is made to one person no use or trust results in favor of another who paid the consideration. They establish a voluntary express trust, which is valid and enforceable. Patrick v. Prater, 144 Ky. 771, 139 S. W. 938; Erdman v. Kenney, 159 Ky. 509, 167 S. W. 685; Meadors v. Meadors' Adm'r, 192 Ky. 457, 233 S. W. 1053; Anglin v. Powell, 235 Ky. 705, 32 S. W. 2d 54; Stiefvater v. Stiefvater, 246 Ky. 646, 53 S. W. 2d 926.

The parties are middle-aged widows and were friends and neighbors. One or the other has not told the truth. That is a blunt statement, but there can be no mere mistake.

The plaintiff, now appellee, is corroborated by other witnesses that she had tried to buy the lot. She made a written offer to do so in February, 1943. The owner, Nat Levy, refused it because he wanted to build a house on the lot before he sold the property. According to the plaintiff, she told her friend, Mrs. Morris, about this, and she responded that she could get the property as she was acquainted with Levy and was a defense worker. Mrs. Thomas' claim that she agreed to buy the property in her own name for Mrs. Thomas is somewhat corroborated by Charles LaVelle. He testified that in April or May at her request he talked with Mrs. Morris over the telephone and asked her if she would be willing to take a deed to be recorded later as it was his understanding that only a "war worker" could purchase this particular property, and Mrs. Morris replied she did not want to talk to him about the matter. He advised Mrs. Thomas not to enter into the transaction. Mrs. Morris denies any such conversation. She stands contradicted by Mrs. Thomas, Mr. LaVelle and his son, who was present. The plaintiff testified she drove Mrs. Morris to Levy's office and gave her $2,500 in cash for the down payment. She entered alone and made a written

contract to buy the property. In July, when the house had been about completed, Mrs. Thomas again took the defendant to Levy's office and gave her $2,390 in cash with which she paid the balance of the purchase price and received the deed. On August 10, 1943, Mrs. Thomas moved into the house and has lived there ever since, planting shrubbery, leveling the yard, painting the house, and in many other ways exercising the right and dominion of ownership. The building contractor testified that at Mrs. Thomas' request certain changes were made in the garage while it was being erected.

On the other hand Mrs. Morris testified that she had never had any discussion with the plaintiff about buying the lot; that she wanted it as a place to exhibit shrubbery which she was selling as an agent; that her mother drove her to Levy's office where she paid him $2,500 which she had taken from their savings kept in a tin "safe" at their home. A title bond in her name of date April 30, 1943, was filed. The last payment, made at a bank, was also in cash, which came from the same box. She is corroborated by her mother. Mrs. Morris testified that after she had bought the property Mrs. Thomas told her that she was going to have to sell her business, and that it was agreed then that she should occupy this house as Mrs. Morris' representative to take care of it and rent rooms to defense workers. She was to receive $12 a month for that service. The defendant testified that these payments were made until 1946, but she introduced only five receipts by which the plaintiff acknowledged the receiving of $12 for services rendered as housekeeper. The first one is dated July 27, 1943, for the month of August, and the other four run consecutively until December, 1943. She produced no others. On this point Mrs. Thomas denied any such arrangement and testified that she signed the five receipts at Mrs. Morris' request in order, as she claimed, to satisfy the Federal housing authorities that the house was being rented to defense workers. It does not appear that Mrs. Morris was a defense worker herself or that any such workers ever roomed in this house except two from September to December, 1943, and the so-called receipts carry no information as to the point claimed by Mrs. Morris. That the Federal Housing Administration was concerned is shown by a letter to Mrs. Morris returning her

approved petition, which though ambiguous would seem to have been filed to obtain material to complete construction of the house.

The taxes, insurance, and cost of a sidewalk and of the shrubbery were paid by Mrs. Morris, but Mrs. Thomas contended that she repaid her and introduced cancelled checks drawn to cash for near amounts and close to the dates those bills were paid. Some of the checks carry her notation what they were for. Mrs. Thomas showed that she had paid the express charges on the shrubbery and the utility and coal bills, but Mrs. Morris says that she received credit for those items when they settled for the roomers' rent. But there was no documentary evidence of any such transaction. In 1946 Mrs. Thomas had the house painted and some interior decorating done for which she paid. Mrs. Morris says this was without her knowledge or consent.

There is much other contradictory evidence. However, on the whole, that of the plaintiff is more consistent with the probabilities, while that of the defendant does not have the flavor of verisimilitude. So far the evidence is so nearly equipoised that it could scarcely be said that the plaintiff proved a parol trust clearly and convincingly, which is required by the established rule. The decisive point is proof of ability to have paid the purchase price.

Mrs. Thomas established by documentary evidence her ability to pay for the property. She had received more than $6,000 from the estate of her husband, who died in April, 1941. She had withdrawn $2,500 from his postal savings account in June, 1941. Although this was almost two years before the transaction, there is nothing to refute her testimony she had kept it at her home where it had been customary for her husband and herself to keep large sums of money. He had $800 in cash there when he died. On February 8, 1943, (two months before her offer to buy the lot) Mrs. Thomas withdrew $2,500 from another savings account which had belonged to her long before her husband's death. Shares of stock in a building and loan association of the value of $3,000 were cashed from time to time between May 24, 1943, and June 8, 1946. For two years or more

she had operated her husband's barber shop, which she sold in May, 1943.

There is very little substantial evidence other than her own bare testimony that Mrs. Morris was able to pay for the property. She and her mother testified that the money was their savings, accumulated over a period of twenty years, and kept at home. The estimate of their annual joint incomes is shown to be wrong by documentary proof or their employers and their respective income tax returns for 1943. These show a joint gross income of less than $2,200 for 1943. No income tax returns were made for earlier years. And there are discrepancies in Mrs. Morris' testimony as to her employments. The master commissioner heard the witnesses orally. He recognized the responsibility and difficulty of deciding the case. He found the defendant evasive on material points. His report is in part:

"To each of these two women the property involved represents security, probably for the rest of her life. It is obvious that one of the women was honest and trusting, but negligent in the proper handling of business affairs. It is also obvious that the other woman was a scheming person, who deliberately concocted a plan to rob the other. The stories of both plaintiff and defendant have elements of plausibility, and each contains inconsistencies. It would be a terrible thing if the Court should make a wrong decision as to which is the innocent party.

"In the consideration of an entire case, there is a certain intangible feeling which a judge may develop, apart from any mathematical attempt to add up the evidence for or against either party. Your Commissioner has completed his study of this action convinced of the justice of plaintiff's case."

After the commissioner's report had been filed the defendant sought unsuccessfully to have the case opened up for the introduction of what she termed newly discovered evidence. Her affidavit is, in substance, that since the taking of the proof she had presented to her attorney the tin box, described by her as the safe, in which she and her mother had kept their savings, and he had discovered approximately $7,500 in it, which she had forgotten about and had overlooked. This money

she described as consisting of gold certificates, national bank notes, and large-size bills, the issuance of which had been discontinued long before 1943. One of the chief issues in the case had been whether Mrs. Morris could have accumulated and could have had on hand $4,890 in cash when the property was purchased. In view of her extended cross-examination and the weakness of her proof on this point, it is a fantastic idea that she forgot about having this large sum of money. Even so, there was certainly no manifestation of diligence. Moreover, the fact that she had this money in 1947 is no proof of her ability to purchase the property in 1943. This ruling was proper.

We are of the opinion that the judgment is correct, and it is affirmed.