## MORRIS v. THOMAS.

Court of Appeals of Kentucky.
June 1, 1951.

Karem & Karem and Lawrence S. Grauman, all of Louisville, for appellant.

W. J. Goodwin, D. L. Frederick, Louisville, for appellee.

SIMS, Justice.

This is the second appeal of this case. The former opinion, reported in 310 Ky. 501, 220 S.W.2d 958, affirming the judgment of the chancellor, gives a full statement of the facts and we will not repeat them, except where necessary to an understanding of this opinion.

The present action was instituted under § 518 of the Civil Code of Practice on the ground of newly discovered evidence. The chancellor sustained a general demurrer to the petition, dismissed it and this appeal followed.

The petition in the instant case gives the history of the former litigation and avers that before the trial of the first case Mrs. Morris "sought out all witnesses, pursued the records of public utilities and interrogated the people in the vicinity of the property and produced every witness she knew or could by reasonable diligence have discovered"; that after losing the case in this court, she by chance learned that her cousin, Frank Morris, knew material facts which were not merely cumulative or impeaching, and he put her in touch with Bright Sea and James Grider, who also knew some material facts. She filed her affidavit, as well as the affidavits of the newly discovered witnesses, setting out in detail how she discovered these witnesses and giving the facts to which each would testify.

The averments in the petition and supporting affidavits show due diligence upon the part of Mrs. Morris and meet the requirements set out in Vaughn v. Taylor, 288 Ky. 558, 156 S.W.2d 836, and Caldwell County v. Hughett, 301 Ky. 397, 192 S.W. 2d 194, and the authorities therein cited. But courts do not favor new trials and will not grant them on the ground of newly

discovered evidence which is merely cumulative, or of an impeaching character, and the new evidence to authorize the granting of a new trial must be of such unerring character as to preponderate greatly or have decisive influence upon the evidence to be overturned by it. Holliday v. Tennis Coal Co., 264 Ky. 371, 94 S.W.2d 657; Woltering v. Weber's Adm'x, 253 Ky. 55, 68 S.W.2d 440; Norris v. Payton, 260 Ky. 106, 83 S.W.2d 870. An examination of the affidavits of the newly discovered witnesses will show their proposed testimony is either cumulative or impeaching and is not of a decisive character.

Before analyzing the affidavits of these new witnesses, we call attention to the last paragraph of the first opinion, 310 Ky. 501, 220 S.W.2d 958, 961. There, mention is made of the fact that Mrs. Morris moved to reopen the case after the commissioner had made his report, because after taking her proof she had discovered in the little tin box, where she and her mother kept their savings, an additional $7500. This is quite a large sum to be overlooked when one of the main issues in the trial was whether she could have accumulated $4890 in cash to pay for the property. We lift this from the first opinion, 220 S.W.2d on page 959: "The parties are middle-aged widows and were friends and neighbors. One or the other has not told the truth. That is a blunt statement, but there can be no mere mistake."

The substance of Frank Morris' affidavit is that he would testify he saw Mrs. Thomas and Mrs. Morris making an accounting and settlement for rents wherein Mrs. Thomas paid Mrs. Morris $12 and took a receipt therefor. On another occasion he saw Mrs. Thomas pay Mrs. Morris' mother $8 for rent she had collected for Mrs. Morris. These or similar facts were testified to by other witnesses on the original

trial and are discussed in the former opinion.

The affidavit of Claude Davis is to the effect that he would testify "he rented a room from Mrs. Thomas at $10 a week, who said not to tell Mrs. Morris, the owner of the house, it was but $5." This same character of testimony by other witnesses appeared in the record of the former trial and it is only cumulative. The former opinion referred to testimony that Mrs. Thomas was to occupy the house as Mrs. Morris' representative and to rent the rooms. The first affidavit of James Grider is likewise cumulative, wherein he states Mrs. Thomas told him in the presence of Frank Morris that the property belonged to Bessie Morris and that she (Mrs. Thomas) was merely running the place for Mrs. Morris.

The second affidavit of James Grider, corroborated by affidavits of his son, Sidney, and one Gus Gordon, states that after James had given his first affidavit, Mrs. Thomas came in the bar where he was working and "bawled him out" and admitted she had not paid for the property but would keep it. Such testimony would only be contradictory of Mrs. Thomas who testified she had paid the full purchase price of the property.

█ The petition and affidavits set out newly discovered witnesses rather than newly discovered evidence. The testimony the affidavits show these respective witnesses would give is but cumulative or impeaching to that heard on the first trial. By no stretch of the imagination can this testimony be said to be of such a decisive character as would likely overturn the judgment of the chancellor, which was affirmed by this court.

The chancellor correctly sustained a general demurrer to the petition and his judgment dismissing it is affirmed.