## GIBSON v. GIBSON.

Court of Appeals of Kentucky.

May 16, 1952.

J. W. McKenzie, Ashland, for appellant.

Coldiron & Warnock, Greenup, for appellee.

STEWART, Justice.

This is an appeal from a judgment wherein the Chancellor decreed appellee, Wesley Gibson, to be the owner of an undivided one-half interest in approximately 172 acres of land, located on Alcorn Creek in Greenup County. Appellant, Morris Gibson, a nephew of appellee, seeks a reversal on the ground that he alone owns all the interest in the property.

The evidence reveals that Wesley Gibson and his brother, Henry Gibson, were orphans and came to Greenup County at an early age to live with their uncle. When Wesley reached twenty years of age, he rented some land and took Henry with him on the property and they sent for their sister, Emily, to come and reside with them. Emily came and kept house for her two brothers but she later moved to a nearby farm when she married. Subsequently, Henry married Fannie Bowling who henceforth managed the household for both brothers. In 1910 Wesley and Henry purchased a tract of land, taking title as joint grantees. In 1917 they acquired a second tract as co-owners. Wesley conveyed his interest in these two tracts of land to Henry in 1918, the deed reciting a consideration of $400. Wesley testified there was no money paid to him when this transfer was made. Wesley, who could neither read nor write, said Henry convinced him it would be cheaper to pay the taxes on the property if the title to the land was in the name of

just one of them. He further stated it was expressly agreed that Henry was to hold the land for their joint benefit and that Henry had obligated himself to reconvey the legal title to one-half of the real estate at any time he asked for it. This deed was not recorded until 1938, which was twenty years after its execution.

In 1920 the brothers purchased a third tract of land, which, according to Henry, was paid for out of money they had jointly earned. Title to this tract was taken in Henry's name alone. Wesley testified that this was done for the same reason that motivated him to transfer the other two tracts to Henry, i. e., to bring about economy in the payment of taxes. There was likewise an express understanding, so Wesley said, that Henry would reconvey his one-half interest in this tract at any time Wesley demanded it. Some time after 1920, the brothers bought a fourth tract of land known as the "Elam Tract", title to which was deeded solely to Henry, to be held by the latter under the same arrangements as the other three tracts.

Until 1945 Wesley, Henry and Henry's wife, Fannie, all lived and worked together on the farm. Then discord arose between Henry and his wife. In the divorce proceeding that followed between them, Wesley, Henry and Fannie agreed to a property settlement by the terms of which Fannie was to pay over $1000 to the two brothers, she having been custodian of their money through the years, and she was to receive a deed to the "Elam Tract", and Wesley and Henry were to become sole owners of the other three tracts. Upon the consummation of this agreement the $1000 was turned over to Henry. The "Elam Tract" is therefore not involved in the instant case. Thereafter Henry remarried and moved across the river to make his home in Ohio. Meanwhile, Wesley remained on the three remaining tracts, farming the land. About this time, Wesley began to prod Henry for a settlement of their land differences.

On or about December 14, 1948, Wesley and Henry met at the law office of Coldiron & Warnock in Greenup and an understanding was reached whereby Wesley was to acquire Henry's interest in the land in contro-

ᵗ

versy. Wesley agreed to cancel the $500 debt Henry owed him, this being Wesley's part of the money paid by Henry's ex-wife, and he was to pay Henry $1075 in cash, which made the total purchase price $1575. A deed was drawn but was not executed at that time because Henry's wife was in Ohio and Wesley needed time to obtain the money. It was proposed by the parties that they would meet the next day in the same office and complete the transaction. Wesley, however, was unable to get back at the appointed time because of a heavy rain which flooded the roads. On that same day, December 15th, Henry and his wife executed and delivered a deed to the three tracts of land to Henry's son, Morris. The consideration purported to have been paid by Morris was $1500. On the following day, December 16th, Wesley came to Greenup, ready to complete the deal, only to discover what had happened. This litigation to recover Wesley's share in the property followed.

The Chancellor found that at all times until this suit was filed there was an express trust agreement between Wesley and Henry, that one-half the title to the property in question was being held in trust for Wesley by Henry, and that Morris, when he purchased the land from his father, obtained only a one-half undivided interest therein.

Appellant urges the following grounds for reversal: (1) no trust resulted in favor of Wesley; (2) the proof is not sufficient to establish a trust; (3) appellant purchased without notice of any trust agreement; and (4) Wesley's claim, being more than 30 years old, is so old and stale that a court of equity should not enforce it.

At the outset, appellant argues that no trust resulted in favor of Wesley, relying upon KRS 381.170, which reads as follows:

"When a deed is made to one person, and the consideration is paid by another no use or trust results in favor of the latter unless the grantee takes a deed in his own name without the consent of the person paying the consideration, or unless the grantee in violation of a trust purchases the lands deeded with the effects of another person. Such deeds are fraudulent as against the existing debts and liabilities of the person paying the consideration."

The Chancellor found, and we think correctly so, that there was an express trust in the instant case and not a resulting trust. The kind of equitable resulting trust abolished by KRS 381.170 is one arising upon the naked fact that one furnishes the consideration to buy land while the title thereto is taken by another, *without any agreement* as to the use or the trust. See Smith v. Smith, Ky., 121 S.W. 1002. The above section has no application where, as here, there is an express parol promise by one to hold the legal title to the land in trust and for the use of another who furnished the consideration. See Morris v. Thomas, 310 Ky. 501, 220 S.W.2d 958, and many cases cited therein.

A parol trust in realty must be proved by clear and convincing evidence. However, a parol trust must necessarily be established by oral testimony. Taylor v. Fox's Ex'rs, 162 Ky. 804, 173 S.W. 154.

While we must look to the testimony to determine whether the proof is sufficient to establish a trust, we feel it would serve no useful purpose to recite in detail the evidence of each witness. It is sufficient to say that some ten witnesses in and out of the family corroborated Wesley in his contention that the three tracts in litigation belonged to him and Henry jointly. Witness after witness testified to statements made by Henry covering a long period of time which plainly showed the latter recognized Wesley's right in the land. It is an incontrovertible fact that Wesley and Henry appeared at the law office of Coldiron & Warnock in Greenup around December 14, 1948, to settle their affairs. Dorothy K. Griffith, a stenographer for the law firm, testified she was present on the day the two brothers met there, and she said she heard Wesley agree to buy Henry's one-half of the three tracts for $1575, of which $1075 was to be paid in cash and $500 was to be credited thereagainst in satisfaction of the debt Henry owed Wesley. According to her, a deed to Wesley was actually prepared

for Henry and his wife to sign. The evidence of the existence of an oral trust in the three tracts of land in behalf of Wesley appears clear and convincing and we think the Chancellor's finding upon this point should not be disturbed.

The contention that appellant had no notice of the beneficial interest of Wesley in the land in question appears to be without merit. Morris was reared in the same household with Wesley, his father, Henry, and his mother, Fannie. Dorothy Conley, a sister of Morris, stated in her deposition that she had heard Wesley and Henry talk innumerable times about their joint ownership of the three tracts in the presence of the whole family, including Morris, and she said Morris knew of the negotiations between Wesley and Henry that took place on December 14, 1948, at Coldiron & Warnock's law office. Millard Artis and Virgil Sizemore, neighbors of the Gibsons, in their depositions related a conversation they had with Morris sometime in 1947 when Morris, discussing the separation agreement between his father and mother, told them Wesley and Henry took $1000 and the "upper place", referring to the three tracts, and Fannie accepted the "lower place", meaning the "Elam Tract". Morris testified he paid his father $1500 for the property and when asked on cross-examination where he got the cash his reply was: "I think that's my business where I got the money"; and he steadfastly refused to divulge the source of the funds he claims to have paid his father for the land. From the evidence, we believe it cannot be doubted that Morris had actual notice of his uncle's interest in the land. It seems strange indeed that Morris could be in the dark about his uncle's claim when practically every one else in the neighborhood, even his sister and his near relatives, knew that Wesley and Henry owned the land jointly.

A final contention is that appellee has allowed his claim to become old and stale by waiting for more than thirty years before bringing suit for its enforcement, and, in consequence, equity should not grant him the relief sought. This is not a case where the acts of the parties create a presumption unfavorable to the existence of a trust. On the contrary, the facts established beyond doubt a trust that has all along been active, continuous and vibrant with life. From 1920, the year Henry became vested with legal title to all the land, until December 16, 1948, the date this litigation began, Wesley and Henry jointly operated the farm, sold the crops raised thereon and participated in all the profits. It was after Henry married a second time and removed to Ohio that the relationship between them changed. Then it was that the trust became inconvenient and unsuitable for the purpose it was designed for, and the brothers started negotiations which culminated in their meeting at the law office of Coldiron & Warnock for a settlement of their differences. The events that transpired in the law office certainly leave little if any doubt in one's mind that the trust was actual and continuous. We feel that this case is one where the facts fit the rule laid down in Helm's Ex'r v. Rogers, 81 Ky. 568, wherein this Court said: "Lapse of time is ineffectual as a bar where the relation of trust is acknowledged to exist between the parties and its continuance is unbroken."

In view of our decision, it becomes unnecessary to pass upon appellee's contention that the "supplemental transcript of evidence" be stricken from the record.

Wherefore, the judgment is affirmed.