MYERS & CLARK COMPANY, Inc., et al.,
Appellants,

v.

May LAYNE, Appellee.

Court of Appeals of Kentucky.

March 14, 1958.

Rehearing Denied May 16, 1958.

Dysard, Dysard & Johnson, Ashland, Howard & Frances, Prestonsburg, for appellants.

Claude P. Stephens, Prestonsburg, W. A. Daugherty, Pikeville, for appellee.

MOREMEN, Chief Justice.

This is an appeal from a judgment which awarded appellee, May Layne, $11,359 as damages for injuries sustained by her when she was struck by an automobile driven by Ettley Hester, an employee of Myers & Clark Company, Inc.

Appellants urge as grounds for reversal that: (1) appellee's own lack of care was the proximate cause of her injuries and appellants' motion for a peremptory instruction should have been sustained; (2) the final argument of appellee's counsel amounted to misconduct and entitled appellants to a new trial, and (3) a new trial should have been granted because of newly discovered evidence.

On October 29, 1955, Kelly Layne, son of May Layne, the appellee, drove his mother to the small community of Ivel in Floyd County. He had been traveling in a northerly direction on U. S. Highway 23 and, upon reaching the community, he parked near a filling station located on the right-hand side of the road. The main portion of the community is separated from the highway by a river and, in order to reach this part of Ivel, it is necessary to cross a swinging bridge.

Mrs. Layne descended from her son's truck on the east side of the highway and began walking in a northerly direction on the shoulder of the road. She passed a truck occupied by Isom Hurd and Joe Click which was parked in front of her son's truck and continued to walk for a distance of about 25 or 30 feet. When she was about 50 feet from the bridge, she started diagonally across the highway to the bridge. The highway is 18 feet wide and has shoulders which are wide enough to accommodate a car on each side of the road. Although the road generally in this section might be properly described as curving, still at this particular part it is almost straight for approximately 325 feet.

This case is rather unusual in that Mrs. Layne was able to relate little about the accident or anything else. It was suggested in the brief that her mind had failed. The appellants did not introduce any evidence and stood on their motion for a directed verdict. We must depend upon testimony of people who were not involved in the accident.

The two men who were sitting in the truck which had been parked in front of the Layne truck were the principal witnesses. The speed of the automobile which was traveling north on the right-hand side of the highway was estimated at 35 miles per hour. It was also well established that Mrs. Layne did not pursue a direct path across the road, but crossed it in a diagonal direction.

We have some difficulty in determining the exact time the automobile came into view after Mrs. Layne started across the highway, but it seems plain from the evidence that she had almost reached the center of the highway at the time the automobile approached within 50 feet of her. Hester, who was driving the car, sounded the horn, turned onto the left side or lane of the highway, and Mrs. Layne started to run toward the bridge. Hester drove his car onto the west shoulder of the road adjoining the river and then cut sharply to the right in order to regain the pavement. At this instant Mrs. Layne either ran into or was struck by the right side of the automobile driven by Hester. The record does not disclose whether appellee looked at or was aware of the approach of the car until the horn was blown.

Appellants argue that a greater degree of care is imposed upon a pedestrian who undertakes to cross a highway diagonally than upon one who makes a direct crossing, and rely upon an annotation which may be found in 97 A.L.R. at page 1092. This annotation offers some support for the theory that a person who crosses a road in an oblique direction must exercise greater care than one who crosses directly, but the consensus derived from the cases cited is that it should not be said, as a matter of law, that a person who crosses a highway diagonally is negligent.

■■ Under KRS 189.570, a pedestrian who crosses a roadway at any point other than within a marked crossway or within an unmarked crossway at an intersection

shall yield the right of way to all vehicles upon the roadway, but, under the same section, notwithstanding this duty, every operator of a vehicle must exercise due care to avoid colliding with such a person and must give warning by sounding his horn when necessary and "shall exercise proper precaution upon observing a child or a confused or incapacitated person upon a roadway." We construed the foregoing statute to mean that the duty of pedestrians to yield the right of way does not relieve motorists of the duty to exercise due care to avoid injuring pedestrians who cross streets at places other than those specified by the statute. Shuffitt v. Martin, Ky., 268 S.W.2d 928; Miracle v. Flannery's Adm'r, Ky., 259 S.W.2d 689. Where pedestrians customarily cross but at which there is no marked crosswalk, is an "unmarked crosswalk" within the meaning of the statute. Ellis v. Glenn, Ky., 269 S.W.2d 234. We have held in a number of cases that where a pedestrian blindly stepped into a line of traffic under conditions which indicated that he did so without ascertaining whether any vehicles were approaching, the pedestrian was guilty of contributory negligence as a matter of law. See Kelley v. Reece, Ky., 273 S.W.2d 369; Tarter v. Wigginton's Adm'x, Ky., 310 Ky. 393, 220 S.W. 2d 829, and cases cited therein.

We think the facts in the case at bar present a situation different from those where a pedestrian, without looking, or even when looking and failing to see, steps into the line of traffic. Isom Hurd, who was sitting in the parked truck, testified as follows:

"Q. Did you notice what happened to her, if anything? A. No, sir, nothing only when she started to cross the road I looked through my mirror and seen an old lady and I looked through my mirror to see if there was anything coming, and she was going angling across the road and I saw the car coming down.

"Q. Was there a curve above you there? A. Yes, some distance above but not too much of a curve.

"Q. Where was this car that you say you saw coming down the road with reference to the curve? A. What little curve there was there it was coming around the curve when I saw it.

"Q. Can you give the jury some reasonable idea of the distance from where you saw that car to the place where she was along the road? A. Well, to the best of my knowledge, it would be, oh, 300 or 350 feet."

Appellee's son, Kelly Layne, testified that he had measured the distance and that the "little curve" was 357 feet from the point of the accident. The other witness in the parked truck, Joe Click, testified that appellee was close to the center of the highway when appellant sounded his horn and estimated that he was about 50 feet from her at that time.

As was pointed out in Blashfield's Cyclopedia of Automobile Law, Section 6628: "It is an exceptional case in which a plaintiff's right of recovery should be denied as a matter of law when he has been injured while walking upon a public thoroughfare, and it is the general rule that the issue of whether pedestrians or others on foot have been contributorily negligent is one of fact for the jury." Beam v. Calvert, Ky., 277 S.W.2d 35; Fork Ridge Bus Line v. Matthews, 248 Ky. 419, 58 S.W.2d 615; Durbin v. Banks, 314 Ky. 192, 234 S.W.2d 681; and Sweeney v. Schadler, Ky., 259 S.W.2d 680.

We have concluded that it cannot be said, as a matter of law, that appellants were free from negligence in the operation of the car. Under the evidence a fairminded person might conclude that the driver failed to keep a proper lookout ahead or did not have his automobile under control

when he discovered or should have discovered that appellee was in the road. Nor do we believe that appellee, as was said in Smith v. Collins, Ky., 277 S.W.2d 38, 40, "was guilty of contributory negligence as a matter of law, because fair-minded men might reach different conclusions from this evidence although there is no contrariety in it." Appellants' motion for a directed verdict was properly overruled.

Appellants next complain that counsel for appellee was guilty of misconduct in his closing argument to the jury. The portions of the closing argument to which appellants except are as follows:

"Now, you are not allowed under the law, and we can see the wisdom of that, just to go out here and turn one of these (automobiles) loose and operate it haphazardly and pell-mell upon our public roads. You can't do that. You might just as well turn a maniac loose with a Gatling gun as to turn some reckless individual loose upon our highways with automobiles and trucks and things of that sort without controlling them, rules to guide and control them by, and our courts have settled down on these rules which the court undertakes to give you in his instructions.

"The operator of a car upon a highway must do that in such a reasonable way, and that means as an ordinary prudent person would do, to not injure people upon the highways. They have a right to be on the highway, they have a right to have their cars on the highway, but pedestrians and we old men, and this lady over here, we were here before they were here, and they have no right to push us off the highway. * * * We were here when they came here, and they have got a right to stay with us if they do it in a reasonable way, and we have got a right to do what we have always done, travel our highways and our by-ways, both night and day. We have got a right to do that although we may be too poor, as

I am, to own an automobile. I haven't owned one in ten years. Me and the old car both got feeble and negligent and I tried to go over the hill and skinned my head and quit. So, here we all are, the foot passengers and the cars."

Appellants insist that the effect of the foregoing argument was to array pedestrians against car owners and to appeal to the supposed poverty of the former class as against the supposed wealth of the latter. We believe the automobile is no longer a symbol of riches but has become a necessity of this era. We do not believe the argument had the effect of aligning car owners against non-car owners so as to cause prejudice in the minds of the latter. The remarks, although improper, may not properly be placed in the category of those in Murphy v. Cordle, 303 Ky. 229, 197 S.W.2d 242, 243, where the attorney asked the jury "to make the rich defendants pay," and "to make the rich taxi company pay." Such expressions were a direct and unwarranted reference to the financial condition of the defendant. Neither do we find the language comparable to that used in Weil v. Hagan, 161 Ky. 292, 170 S.W. 618, 619, where counsel said: "You should find a verdict against the defendants in order to protect the lives of citizens in traveling on the highway, and that would be a warning to the drivers of automobiles on the highway." We do not find a similar request in the argument of counsel in this case. That opinion, which was written in 1914, recognized a natural prejudice against automobile owners and drivers by those who were not. We do not believe in this day such prejudice exists for the reason that practically everyone uses or operates an automobile, or in some way identifies himself with that class. We condemn the argument used because it brings in matters not at issue in the case, but we do not find it to be prejudicial.

In connection with their final contention that appellants were entitled to a

new trial because of newly discovered evidence, it is stated that they discovered, after the trial, that Mrs. Layne had theretofore filed suit against Southeastern Greyhound Bus Lines in 1951, and in that case had testified concerning her physical condition which was different from the testimony given in the case at bar. In Morris v. Thomas, Ky., 240 S.W.2d 99, it was pointed out that courts do not favor new trials and will not grant them on the ground of newly discovered evidence which is cumulative or which is of impeaching character. A reading of the newly discovered evidence which appellants wish to offer in this case indicates that the introduction of such testimony would be only for the purpose of impeachment.

Judgment affirmed.