**Edwin Thomas GEORGE, Jr., Appellant,**

v.

**John F. EVANS, Administrator of Estate of
Aline Beatrice Evans, Appellee.**

Court of Appeals of Kentucky.

July 1, 1966.

Fielden Woodward, John P. Sandidge, Louisville, for appellant.

Frank E. Haddad, Jr., Allen Schmitt, Louisville, for appellee.

HILL, Judge.

The appellant, Edwin Thomas George, Jr., appeals from a judgment awarding $8,000 to the appellee, John F. Evans, administrator of the estate of Aline Beatrice Evans, as a result of an accident in which she was killed by a car driven by the appellant.

On June 26, 1962, appellant was driving on Fehr Avenue, a one-way street for eastbound traffic only. The accident occurred at the intersection of Campbell and Fehr streets in Louisville.

At the intersection, a traffic light controls traffic in all directions. The decedent,

Aline Beatrice Evans, a little girl six years and ten months of age and approximately three and one-half feet tall, was killed when struck by appellant's automobile. Fehr Avenue runs east and west, and Campbell Street runs north and south. Fehr provides four nine-foot lanes; the two outside lanes allow parking. When not in use for parking, all four lanes are used by eastbound traffic.

Previous to the time of the accident, Mrs. Evans and her children, including the deceased, had been visiting at 722 Franklin Street. They had started home shortly before 5:00 p. m. and were proceeding south on the west side of Campbell on the sidewalk about a half block north of the intersection of Campbell and Fehr streets when the accident occurred. The mother was pushing a small baby in a Teeter-Tot. At the time of the accident, the mother was one-half block away from Aline as she and some of the other children ran ahead.

When the children reached the intersection of Campbell and Fehr, the traffic control light was red for traffic moving east through the intersection. Thus, there were cars heading east on Fehr in the first two lanes from its north curb waiting for the traffic light to change. The car in the second lane from the north curb of Fehr was driven by Robert Jackson, who witnessed the accident and later testified. A Mrs. Mantle was behind a truck in the line of cars in the lane next to the north curb of Fehr. The appellant was proceeding east on Fehr in the third lane from the north curb about "three or four" car lengths west of the crosswalk at about twenty or twenty-five miles per hour, according to his own testimony, when the light turned green for traffic traveling east on Fehr.

The deceased ran south from the northwest corner of Fehr and Campbell when the light was red for her and green for the traffic. She ran across the first traffic lane, which was against the north curb, and halfway through the second lane when the driver of the first car, Jackson, blew his horn and told her to go back to the north curb. At that time, she stopped and looked at Jackson momentarily and then proceeded, running across the crosswalk of Fehr when she was struck by appellant's car. There were seven or eight cars in the second lane of traffic, it being the one in which Aline had stopped.

Appellant's car was approximately eighteen inches from the right side of the Jackson car and was being driven in its proper lane. At the time of the accident, the Jackson car and all of the other cars in the first two lanes to the north had not started moving. About one-half block away, appellant said, he saw the traffic control light at Fehr and Campbell showing red, which caused him to slow his automobile gradually to approximately fifteen miles per hour. As he slowed down, the other cars to his left were at a standstill; the light changed to green in his favor, giving him the right-of-way when he was approximately five or six car lengths from the intersection. He proceeded to speed up to approximately twenty or twenty-five miles per hour and to go on through the intersection.

After striking deceased, he immediately applied his brakes, resulting in stopping his car with the front of his car even with the west line of the crosswalk on the east side of the intersection.

The deceased was knocked across the intersection with her body coming to rest four feet east of the east line of the east crosswalk of Fehr. The child died from injuries received in the accident.

The appellee introduced in evidence measurements taken by Professor W. R. McIntosh, a civil engineer and instructor at the University of Louisville. The measurements tended to show that the Jackson car was some eleven feet from the deceased when she stopped in front of his automobile; that due to the make of the Jackson car, which was a Buick, and the appellant's car, a Ford, the appellant should

have been able to observe and see the deceased if he had been keeping a proper lookout.

The appellant contends that he was entitled to a directed verdict because there was no negligence proven on his part as the decedent suddenly darted out in front of appellant's car. He was driving at a speed of twenty to twenty-five miles per hour and had his car under such control that he stopped it after the accident within thirty to thirty-six feet. Appellant contends he could not have anticipated that this child would suddenly dart from in front of the Jackson car into the path of his car.

Appellant testified he did not see deceased until the very moment of impact. Having traveled Fehr Avenue to get to his home, appellant admitted he was familiar with traffic conditions, the presence of pedestrians in the vicinity of Fehr Avenue and Campbell Street, and that one block away a housing project contained about five hundred families where children could be expected.

■ Deceased being under the age of seven years at the time of her injury and death was not chargeable with contributory negligence. Appellant pleaded contributory negligence on the part of the mother of deceased. All the evidence on this question was peculiarly within the knowledge of the mother. She testified she cautioned deceased to wait for her at Fehr Avenue. Her evidence later on was confusing as to when or whether she cautioned the deceased to wait; but conceding *arguendo* that it was two blocks away, the question of contributory negligence was a matter for the jury to determine, and its verdict absolved the mother of fault. We cannot say as a matter of law that the verdict is not supported by substantial evidence.

■ We now undertake to examine the facts to determine whether the finding of negligence on the part of appellant was justified. It is true appellant had the "green light" authorizing him to proceed;

but he was in motion, traveling at about fifteen miles an hour when the green light came on. From his own testimony, he was from forty to sixty feet back of the crosswalk when the green light flashed his signal to proceed. He had a right to proceed. In doing so, he remained under three important duties and those were to (a) keep a lookout ahead; (b) travel at a reasonable rate of speed, and (c) keep his vehicle under reasonable control. Did he observe these duties? The answer to this question must take into account all the circumstances. The first, and perhaps the most salient circumstance, was the fact that the entire line of traffic in appellant's left lane of traffic had not moved. Of course, that could have been attributable to a stalled motor or some other cause. But another logical reason, which was the real reason in this case, for its failure to move when the green light appeared was that a pedestrian was in the crosswalk. A person in the crosswalk travels about four to five feet per second, while one traveling in a motor vehicle at twenty-five miles an hour will travel 29.4 feet. The pedestrian often gets caught in the crosswalk after his right to walk has expired, but the rights of the pedestrian and those of the motorist at crosswalks are reciprocal ones. If there is any condition at the intersection that is reasonably calculated to place a driver on notice that a pedestrian is in distress, he cannot heedlessly speed through without taking due caution. In such a situation, the driver's first concern should be to determine whether a pedestrian is in distress, and he cannot do so without keeping a lookout. A lookout will avail him nothing if he does not have his vehicle under reasonable control. What reasonable control is may differ, depending upon the driver's ability to observe the crosswalk and the time of his passing with reference to the changing of the traffic signal. The nearer the time of changing of the signal, the greater the possibility of the pedestrian being in the crosswalk. A motor vehicle traveling at any rate of speed above fifteen miles per hour is an instrument of death

and destruction when colliding with a human being, while a human being will inflict little damage by running into a standing motor vehicle.

■ Considering the peculiar circumstances of the present case, we conclude the jury was justified in finding appellant guilty of negligence. Cf. Potts v. Krey, Ky., 362 S.W.2d 726.

■ Next it is insisted by appellant that the trial court erred in admitting the testimony of an employee of the Kentucky Department of Economic Security, Division of Unemployment Service, on the prevailing wage scale of "domestic help." Appellee was only entitled to recover the loss of earnings of deceased after she arrived at the age of twenty-one years, which period would have commenced about fifteen years after her death. Earning power fifteen years hence is difficult to prove. Of course, the present rate of pay for domestic help may be some evidence of what it may be fifteen years hence. On the other hand, Negro girls twenty-one years of age fifteen years hence may not be limited to "domestic help." It could well be that such persons may be the employers at that time. It was shown deceased was well and healthy and that was sufficient to support the $8,000 verdict. Based upon the life expectancy of 46.77 years for "non-white" females, the deceased would have earned over thirty thousand dollars at the rate of six dollars per day.

■ Finally, appellant complains of the giving of a last clear chance instruction. This record discloses that the appellee's decedent was in a perilous position from which she could not extricate herself and that appellant had a continuing duty of lookout. In these circumstances, the last clear chance doctrine is applicable. Severance v. Sohan, Ky., 347 S.W.2d 498; Saddler v. Parham, Ky., 249 S.W.2d 945; Riley v. Hornbuckle, Ky., 366 S.W.2d 304. The jury was fully justified in concluding appellant had a "last clear chance" to avoid the accident. Cf. United Fuel Gas Co. v. Friend's Admx., Ky., 270 S.W.2d 946.

The judgment is affirmed.

MONTGOMERY, Judge (dissenting).

I respectfully dissent because I am in accord with the principles stated in Johnson v. Gaines, Ky., 313 S.W.2d 408, and Clayton v. Gray, Ky., 348 S.W.2d 938, holding the driver free of negligence under factual situations which are not distinguishable from the facts of the instant case. Further, under the doctrine of Whitesides v. Reed, Ky., 306 S.W.2d 249, the giving of a "last clear chance" instruction cannot be justified here. There are other cases that sustain the principles of the cases cited.

If the court is going to change the law it should, in all fairness, point out to the losing litigants and the profession generally the basis for distinguishing the cases, or else overrule them, so that the law may have some certainty and that some guide be established by which advice may be given and litigation may be conducted. The old saying "the devil can cite Scripture for his own purposes" will become equally applicable to the law, and that is bad.

Accordingly, I disagree with the majority opinion.

STEWART, J., joins in this dissent.